241 F.Supp. 933 (1965)
UNITED STATES of America
v.
Frank ROMANO and Anthony DiPietro.
UNITED STATES of America
v.
Samuel ROSENCRANZ.
Crim. A. Nos. 62-19, 62-32.
United States District Court D. Maine, S. D.
May 19, 1965.
*934 *935 Alton A. Lessard, U. S. Atty., William E. McKinley, Asst. U. S. Atty., Portland, Me., for plaintiff.
Casper Tevanian, Ralph I. Lancaster, Jr., Portland, Me., Joseph J. Balliro, Boston, Mass., for defendants.
GIGNOUX, District Judge.
Defendants Anthony DiPietro, Frank Romano and Samuel Rosencranz were convicted, following a jury verdict, of various offenses relating to the operation of an illicit still.[1] On appeal, their convictions were reversed on the ground that evidence introduced at the trial had been obtained as the result of an unlawful search of a truck owned and operated by a co-defendant. Rosencranz v. United States, 334 F.2d 738 (1st Cir. 1964). There are now before the Court defendants' motions under Fed.R.Crim.P. 41(e),[2] filed subsequent to the remand of the proceedings to this Court, to suppress for use as evidence at their second trial materials seized in the course of an allegedly illegal search of the premises on the Ash Swamp Road in Scarborough, Maine, upon which the still was found.
The Government raises two preliminary questions which must be passed upon before considering the merits of defendants' motions. First, the Government challenges defendants' standing to file the motions, on the ground that they are not "person(s) aggrieved" within the meaning of Rule 41 (e). See Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The Court received evidence on this issue. On direct examination DiPietro testified that at the time of the search in question, and for some months prior thereto, he held legal title to the premises involved. He also testified that he had not leased or otherwise surrendered possession of the premises to any other person. While on cross-examination he admitted that he had never in fact occupied the premises and denied any interest in the materials seized by the agents therefrom, his testimony as to ownership was neither contradicted nor impeached. Under these circumstances it cannot be seriously doubted that this defendant had a sufficient interest, as the owner of the premises searched, to establish him as a "person aggrieved" by their search, and to give him standing to make his present motion. See Jones v. United States, supra, 362 U.S. at 265, 80 S.Ct. 725; Jeffers v. United States, 88 U.S.App.D.C. 58, 187 F.2d 498, 500-501 (1950), aff'd, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). It is also clear that under the *936 rule set forth in McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948), the Government would be precluded from using against DiPietro's co-defendants Romano and Rosencranz any unlawfully seized evidence which it could not use against DiPietro himself. Rosencranz v. United States, supra; Schoeneman v. United States, 115 U.S.App.D.C. 110, 317 F.2d 173, 174, n. 5 (1963); Hair v. United States, 110 U.S. App.D.C. 153, 289 F.2d 894 (1961); compare United States v. Serrano, 317 F.2d 356 (2d Cir. 1963); United States v. Chieppa, 241 F.2d 635, 637-38 (2d Cir. 1956), cert. denied, 353 U.S. 973, 77 S.Ct. 1057, 1 L.Ed.2d 1136 (1957).[3] Whether the true scope of McDonald is that set forth in the majority opinion in Rosencranz, or that suggested in the concurring opinion in that case, this Court rules that defendants here have the necessary standing to file their present motions to suppress.[4]
The Government next questions that defendants' present motions have been timely filed. It argues that the provision of Rule 41(e) which requires that motions to suppress be made before trial precludes the defendants from filing motions to suppress at this time based on grounds which were not presented to the Court prior to their first trial.[5] The Court cannot agree. This provision of Rule 41(e) "is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt." Jones v. United States, supra, 362 U.S. at 264, 80 S.Ct. at 732. Its purpose is to avoid the delay and confusion which would result from the necessity of determining during trial an issue as to the admissibility of evidence which may be efficiently isolated and disposed of in advance of trial. Waldron v. United States, 95 U.S.App.D.C. 66, 219 F.2d 37 (1955); United States v. Jennings, 19 F.R.D. 311, 312 (D.D.C. 1956), aff'd, 101 U.S.App.D.C. 198, 247 F.2d 784 (1957); 4 Barron, Federal Practice and Procedure, § 2406, at 361 (1951). Defendants' present motions have been filed well in advance of their impending second trial, and the issues which they present can be determined at this time without contravening the policy underlying the Rule. They raise substantial questions of constitutional rights and should not be barred by a "narrow, finicky procedural requirement." Jones v. United States, supra, 362 U.S. at 264, 80 S.Ct. 725. For these reasons this Court concurs in the view expressed by Holtzoff, J., in United States v. Watson, 146 F.Supp. 258, 259 (D.D.C.1956), rev'd on another ground, 101 U.S.App.D.C. 350, 249 F.2d 106 (1957), that after a conviction is reversed and a case is remanded for a new trial, a defendant's original rights are reinstated and he is not precluded from filing a motion to suppress evidence prior to his retrial. Nor is he *937 precluded from urging in support thereof legal grounds not previously raised. Cf. United States v. Paroutian, 319 F.2d 661 (2d Cir. 1963), cert. denied, 375 U.S. 981, 84 S.Ct. 494, 11 L.Ed.2d 426 (1964); Booth v. United States, 154 F. 836, 837 (2d Cir. 1907). Furthermore, even if the Court might properly dismiss defendants' present motions as not timely filed, the Court would be disposed, because of the appearance of new counsel and the rapidly changing law in the search and seizure area, to exercise its discretion under Rule 41(e) to entertain these motions at this time. See Jones v. United States, supra, 362 U.S. at 264, 80 S.Ct. 725. Accordingly, the Court holds that defendants' motions are timely filed. It will therefore pass upon their merits.
The challenged search was carried out under a search warrant, which was issued upon the affidavit printed in the margin.[6] Defendants assert that the affidavit fails to set forth sufficient facts from which the Commissioner could properly find that there was probable cause for issuing the warrant.[7]
The standards by which a court should determine whether an affidavit sufficiently sets forth probable cause for the issuance of a search warrant are well settled. When a Commissioner determines that an affidavit makes out the probable cause required for issuing a warrant, he performs a judicial act. Giordenello v. United States, 357 U.S. 480, 485-487, 78 S.Ct. 1245, 2 L.Ed.2d *938 1503 (1958). In reviewing that judicial act a court must make its own judgment on the basis of the information brought to the Commissioner's attention, which in this case is limited to that contained in the affidavit. Jones v. United States, supra, 362 U.S. at 271, 80 S.Ct. 725; Schoeneman v. United States, supra; United States v. Casino, 286 F. 976, 977 (S.D.N.Y.1923) (L. Hand, J.). Probable cause means more than mere suspicion, but does not require proof beyond a reasonable doubt. Draper v. United States, 358 U.S. 307, 311-313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Cali v. United States, 338 F.2d 974, 977 (1st Cir. 1964). A finding of probable cause may rest upon evidence which is not legally competent in a criminal trial. Draper v. United States, supra, 358 U.S. at 311. The test is whether "the facts and circumstances within * * * [the affiant's] knowledge and of which * * * [he] had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that" a crime was being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032 (1925); Cali v. United States, supra. Hearsay may be the basis for the issuance of a warrant "so long as a substantial basis for crediting the hearsay is presented." Jones v. United States, supra, 362 U.S. at 269, 80 S.Ct. at 735. Thus, an affidavit based on hearsay information is sufficient if it discloses "some of the underlying circumstances" from which the affiant concluded "that the informant * * * was `credible' or his information `reliable'". Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). Finally, the Supreme Court only two months ago in United States v. Ventresca, 380 U.S. 102, 105, 108-109, 85 S.Ct. 741, 744, 746, 13 L.Ed.2d 684 (1965), laid down the following guidelines "by which a reviewing court should approach the interpretation of affidavits supporting warrants which have been duly issued by examining magistrates":
"(T)he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
"* * * (T)he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."
Measured by the above principles, the present affidavit, although meager, sets forth facts sufficient to establish probable cause and to authorize the Commissioner to issue the search warrant in question.
Defendants' major attack on the affidavit is that the facts alleged as tending to establish probable cause to search are inadequate because of the affiant's failure to spell out the time when they occurred.[8] Defendants correctly point *939 out that the facts relied upon must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Sgro v. United States, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 S.Ct. 260 (1932); Dandrea v. United States, 7 F.2d 861 (8th Cir. 1925). However, if the affidavit in this case is read "in a commonsense way rather than technically", United States v. Ventresca, supra, 380 U.S. at 109, 85 S.Ct. at 746, surely the first fact set forth as establishing probable cause must reasonably be construed as speaking as of the date of the affidavit, for the present tense is used, viz., "Information given anonymously to the Affiant that the aforementioned materials are being held on said premises." (Emphasis added.) People v. Nelson, 171 Cal.App.2d 356, 340 P.2d 718 (1959); Hanson v. State, 55 Okl. 138, 26 P.2d 436 (1933); Alexander v. State, 123 Tex.Cr.R. 65, 57 S.W.2d 157 (1932) (on motion for rehearing); cf. Dunn v. Eureka Munic. Ct., 22 Cal.App.2d 858, 34 Cal.Rptr. 251, 260, n. 11 (1963); Waggener v. McCanless, 183 Tenn. 258, 191 S.W.2d 551, 162 A.L.R. 1402 (1946). While the second fact set forth in the affidavit, viz., "The detection of a strong odor of mash outside the premises by the Affiant," does not speak expressly in the present tense, such must be its commonsense construction. Upon reading the affidavit as a whole, United States v. Ventresca, supra, 380 U.S. at 111, 85 S.Ct. 741, it seems clear that in its context this allegation must fairly be regarded as elliptically tied to the present tense used in the preceding allegation of fact; and to the affiant's allegation in the body of the affidavit "that he (has reason to believe)" that the described property "is now being concealed" on the premises. (Emphasis added.)[9]
This Court recognizes that other courts have held affidavits defective on the ground that they did not sufficiently state the time when the observations upon which they rely were made. E. g., Poldo v. United States, 55 F.2d 866 (9th Cir. 1932); Staker v. United States, 5 F.2d 312 (6th Cir. 1925); Conti v. Morgenthau, 232 F.Supp. 1004 (S.D.N.Y. 1964); United States v. Bosch, 209 F. Supp. 15, 19 (E.D.Mich.1962); Williams v. Commonwealth, Ky., 355 S.W.2d 302 (1962); People v. Musk, 231 Mich. 187, 203 N.W. 865 (1925); People v. Kramer, 38 Misc.2d 889, 239 N.Y.S.2d 303 (1963); Odom v. State, 121 Tex.Cr.R. 209, 50 S.W.2d 1103 (1932). But see People v. Warner, 221 Mich. 657, 192 N.W. 566 (1923). However, these federal cases and the New York case are distinguishable because the affidavits they considered did not speak in the present tense. Moreover, all these cases were decided prior to Ventresca; to the extent that they arrived at a conclusion contrary to that reached here, this Court regards them as inconsistent with the rationale of Ventresca and with the Supreme Court's mandate in that case that affidavits for search warrants "must be *940 tested and interpreted by magistrates and courts in a commonsense and realistic fashion," and that courts should not invalidate a warrant "by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." United States v. Ventresca, supra, 380 U.S. at 108-109, 85 S.Ct. at 746.
For the reasons stated, the Court concludes that the affidavit in this case sufficiently showed probable cause for issuing the search warrant in question. Defendants' motions to suppress the evidence obtained in the resulting search are denied.
NOTES
[1] DiPietro, Romano and six other defendants were joined in one indictment. Rosencranz was charged in a separate indictment. Both indictments were consolidated for trial. Of the six other defendants, four pleaded guilty prior to trial, one was acquitted, and one did not appeal from his conviction.
[2] Rule 41(e) provides:

"Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."
[3] This is so even though the evidence suppressed as to DiPietro would not be returned to him because contraband. Rosencranz v. United States, supra at 740-741, n. 3; Schoeneman v. United States, supra.
[4] Under the view of Aldrich, J., concurring in Rosencranz, all three present defendants clearly have standing to file pretrial motions to suppress the evidence in question, since they are "parties against whom the search was directed." 334 F.2d at 742. A strict interpretation of the view of the majority in Rosencranz, as to the more limited scope of McDonald, might indicate that Romano and Rosencranz have no standing to move in advance of trial to suppress evidence which should be suppressed upon DiPietro's motion, and that their rights to the exclusion of such evidence would arise only when it is offered against them at the trial. To insist that the rights of these defendants to the exclusion of such evidence cannot be determined until trial would not only be wasteful, but would also be inconsistent with the provision of Rule 41(e), requiring motions to suppress to be made before trial, which, as discussed below, is designed to free the trial from irrelevant issues. This Court does not read Rosencranz as so requiring.
[5] Although two co-defendants, prior to the first trial, made timely motions to suppress as evidence the materials which are the subject of the present motions, they did not then urge the same legal grounds which these defendants are presenting in support of their present motions.
[6] The affidavit was as follows:
 "United States District Court for the District of Maine, Southern Division
 UNITED STATES OF AMERICA Commissioner's Docket No. 2
 v Case No. 208
 JOHN DOE

AFFIDAVIT FOR SEARCH WARRANT
BEFORE HERBERT H. SAWYER, 443 Congress Street, Portland, Maine
The undersigned being duly sworn deposes and says:
That he (has reason to believe) that (on the premises known as) the one and one-half story wooden frame dwelling house and barn, formerly owned by one Bovine, located on the north side of Ash Swamp Road, three-tenths of a mile easterly from the intersection of Lincoln Road and Ash Swamp Road, Scarborough, Maine, in the Southern District of Maine there is now being concealed certain property, namely mash fit for distillation, apparatus for the purpose of distillation and non-tax paid alcohol which are held in violation of Title 26 U.S.C. § 5601(a), (1), (6), (7), (8), (12);
And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:
1. Information given anonymously to the Affiant that the aforementioned materials are being held on said premises.
2. The detection of a strong odor of mash outside the premises by the Affiant.
 /s/ Richard K. Weller
 Signature of Affiant
 Criminal Investigator, U. S.
 Treasury Department
 Official Title, if any
 Sworn to before me, and subscribed in my presence, March 24, 1962.
 /s/ Herbert H. Sawyer
 United States Commissioner"

[7] Defendants in their motions also allege that the search warrant was improperly executed and that the property seized was not that described in the warrant; however, they did not build a record to support these allegations and did not raise them at the hearing. The Court finds no merit in them.
[8] Defendants also have asserted that the affidavit was defective because: (1) the affidavit lacked any statement that the affiant was qualified to identify the odor of fermenting mash; (2) the affidavit did not sufficiently describe the premises; (3) the affidavit used the term "mash" rather than "whiskey mash" or "fermenting mash"; and (4) the affidavit did not identify the odor of mash as emanating from the premises. The last three contentions were not pressed in oral argument. In any event, in the light of United States v. Ventresca, supra, there can be no merit in these points. The Court of Appeals disposed of the first contention in its opinion in this case of March 3, 1964, which was withdrawn for a different reason. It there said:

"In order for a search warrant to be valid the supporting affidavit need not contain all the information possessed by the officers seeking it. United States v. Bell, 17 F.R.D. 13 (D.D.C.1955). The recitation in the affidavit that the affiant was a Criminal Investigator for the Treasury Department would allow the Commissioner to determine that the affiant was qualified to recognize the odor of mash. See United States v. Ramirez, 279 F.2d 712 (2d Cir. 1960), cert. denied, 364 U.S. 850 (1960)."
[9] In United States v. Ventresca, supra, 380 U.S. at 111, 85 S.Ct. at 747, the Supreme Court recognized that "a qualified officer's detection of the smell of mash has often been held a very strong factor in determining that probable cause exists so as to allow issuance of a warrant." (Citations omitted.) Clearly in the present case it furnished "a substantial basis for crediting" the anonymous information received by the affiant, Jones v. United States, supra, 362 U.S. at 269, 80 S.Ct. 725, and it was an "underlying circumstance" from which the affiant could properly conclude that the anonymous information was "reliable." Aguilar v. Texas, supra.