Michael **BINKIEWICZ**, Petitioner,

v.

Charles Palmer **SCAFATI**, Superintendent of Massachusetts Correctional Institution at Walpole, Respondent.

Misc. Civ. No. 65–33–J.

United States District Court
D. Massachusetts.

Feb. 23, 1968.

234

Ronald R. Popeo, Boston, Mass., for petitioner.

Elliott Richardson, Atty. Gen., Willie J. Davis, Sp. Asst. Atty. Gen., Boston, Mass., for respondent.

## OPINION

JULIAN, District Judge.

Petitioner Michael Binkiewicz, a State prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking to overturn his 1958 State court convictions arising out of events connected with the robbery of the People's National Bank of Marlborough, Massachusetts.

Petitioner, his co-defendant Painten, and another were found guilty by a jury after a twelve-day trial in June, 1958. A fourth co-defendant pleaded guilty during the trial and then testified for the Commonwealth. Petitioner was sentenced to serve a term of 24 to 25 years for armed robbery while masked and disguised, a consecutive term of 2 years for conspiracy to steal, and a concurrent term of 9 to 10 years for larceny of a motor vehicle.

In his petition Binkiewicz advances six separate alleged violations of his constitutional rights as grounds for relief:

1. That he was denied the effective assistance of counsel.

2. That he was deprived of his constitutional right to counsel of his choice.

3. That his confinement in a wire cage during his trial deprived him of an impartial trial in violation of the Sixth Amendment.

4. That his confinement during his trial in a wire cage constituted a denial of equal protection.

5. That he was deprived of his presumption of innocence by the judge's instruction to the jury.

6. That the erroneous admission of evidence unlawfully seized from a co-defendant, which was used against the petitioner, violated his constitutional rights.

The Massachusetts Supreme Judicial Court rejected the first two contentions in Commonwealth v. Binkiewicz, 1961, 342 Mass. 740, 743–746, 175 N.E.2d 473, denied petitioner's subsequent request for a rehearing, and on September 13, 1961, denied his petition for a writ of error which he had filed *pro se.*

Alleged violations 3, 4, and 5 have never been presented in the State courts.

The sixth ground for relief, namely, the introduction in evidence of articles seized in the course of an allegedly illegal search of co-defendant Painten's apartment, has never been presented to the State courts *by the petitioner.*

The legality of the search and seizure, however, was raised before the Massachusetts Supreme Judicial Court by co-defendant Painten in a petition for a writ of error, which was dismissed. Painten thereafter raised the same issue in his petition for a writ of habeas corpus in this District Court. After a hearing at which evidence was taken the Court ruled that Painten's Fourth Amendment rights had been violated by the entry into his apartment, by his arrest, and by the search and seizure of the articles in his apartment which were introduced in evidence against him. Accordingly the District Court set aside Painten's conviction and ordered his release unless he was brought to a new trial within a specified time. Painten v. Commonwealth of Massachusetts, 1966, D.C.Mass., 252 F.Supp. 851. The Court of Appeals affirmed. Commonwealth of Massachusetts v. Painten, 1 Cir., 1966, 368 F.2d 142. The Supreme Court granted certiorari. 386 U.S. 931, 87 S.Ct. 955, 17 L.Ed.2d 805.[1] Thereafter, on January 15, 1968, the writ was dismissed as improvidently granted. 389 U.S. 560, 88 S.Ct. 660, 19 L.Ed.2d 770.

The Commonwealth contends that the petitioner's application for a writ of habeas corpus should be denied because he has not exhausted the remedies available to him under the Massachusetts habeas corpus statute, G.L. c. 248, §§ 1–34.

■ The requirement that an applicant for a writ of habeas corpus in a federal court must first have availed himself of such remedies as are afforded by the laws of the State was restated in Fay v. Noia, 1963, 372 U.S. 391, 419–420, 83 S.Ct. 822, 838–839, 9 L.Ed.2d 837, as follows:

" * * * With refinements, this doctrine requiring the exhaustion of state remedies is now codified in 28 U.S.C. § 2254. But its rationale has not changed: 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation * * *. Solution was found on the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.' * * * The rule of exhaustion 'is not one defining power but one which relates to the appropriate exercise of power.' * * * "

■ The exhaustion doctrine requires no more than that the State courts be given the initial opportunity to rule on the particular issue presented. Sec-

1. By agreement of the parties this Court postponed decision on this petition pending Supreme Court review of *Painten.*

tion 2254 is explicit on the point. The pertinent provision reads as follows:

"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, *the question presented.*" [Emphasis supplied]

The purpose of the exhaustion doctrine is fulfilled when the State courts have considered and decided the particular question presented. Therefore, where a state prisoner's claim of a constitutional violation has already been raised before the State's highest court by his co-defendant and has been rejected, the prisoner need not submit the same claim once again to the State court before he may petition for relief in the federal court. Hayes v. Boslow, 4 Cir., 1964, 336 F.2d 31, 32; see Brown v. Allen, 1953, 344 U.S. 443, 447, 73 S.Ct. 397, 97 L.Ed. 469.

■■ Accordingly the petitioner Binkiewicz is not required to relitigate in the State courts the question of the legality of the same search and seizure which his co-defendant Painten had previously litigated without success in the Supreme Judicial Court. Garton v. Tinsley, D.C. Colo., 1959, 171 F.Supp. 387; see Evans v. Cunningham, 4 Cir., 1964, 335 F.2d 491, 492–494. Nor is it necessary that the petitioner shall have exhausted his State remedies as to all claimed violations of his constitutional rights on which he relies. It is enough if available remedies have been exhausted as to one claimed constitutional violation which, if established, would require the issuance of the writ, particularly where,

as in this case, the alleged facts on which the other asserted violations are based, even if proved, are most unlikely to recur at the retrial of the case.

■ At petitioner's trial the Court, over his objections, admitted into evidence against him the guns, bullets, serial numbers of currency, and waxed paper obtained in the course of the search of co-defendant Painten's apartment. The holding that these articles were seized in violation of Painten's Fourth Amendment rights is binding upon the Commonwealth and need not be relitigated in the present case.[2]

■ The trial transcript reveals that Binkiewicz objected at trial to the admission of this evidence.[3] Painten, whose apartment was searched, did not object. Painten's failure to object did not, however, preclude his challenging the admission of the evidence at his federal habeas corpus proceeding. The Court there held that, since the bar in 1958 still believed Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, to be good law, no waiver of Painten's right to object could properly be inferred by his counsel's failure to object. Painten v. Commonwealth of Massachusetts, supra, 252 F. Supp. at 855. Binkiewicz, who did object, should hardly be put in a worse position than Painten. See Rosencranz v. United States, 1 Cir., 1964, 334 F.2d 738, 740.

■ A review of the trial transcript reveals that the evidence seized during the illegal search of Painten's apartment was damaging to petitioner

2. The District Court in Painten v. Commonwealth of Massachusetts, supra. 252 F.Supp. at 854, held that although the trial occurred in 1958, the rule of Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, applied. Since the time within which Painten could petition for a writ of certiorari from the Supreme Judicial Court's June 9, 1961, denial of his appeal had not expired when *Mapp* was handed down on June 19, 1961, Painten's conviction was not "final" within the meaning of Linkletter v. Walker, 1965, 381 U.S. 618, 622, n. 5, 85 S.Ct. 1731, 14 L.Ed.2d 601. For the same reason *Mapp* applies here to petitioner Binkiewicz, whose appeal was denied in the same opinion as was Painten's.

3. Transcript, pp. 655, 657, 694.

Binkiewicz.[4] Binkiewicz was not present at the time of the search, however, and there is no evidence to indicate that he resided in the apartment. The question therefore remains whether petitioner has standing to attack the search and seizure. Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

The *Jones* decision, while tending to erase the confusing precedents previously announced as to the interest in the searched premises necessary to confer standing,[5] failed to define an explicit new standard.[6] Petitioner here relies therefore on McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L. Ed. 153, in which the Supreme Court reversed the convictions not only of a defendant from whose room evidence was illegally seized but also of a co-defendant, tried jointly, whom the Court assumed to have suffered no invasion of privacy. The Court found that the wrongful denial of the tenant's motion to suppress prejudiced the co-defendant, because

> "If the property had been returned to [the tenant], it would not have been available for use at trial." 335 U.S. at 456, 69 S.Ct. at 193.[7]

Petitioner also relies on the Court of Appeals decision in Rosencranz v. United States, 1 Cir., 1964, 334 F.2d 738, decided four years after *Jones*. In *Rosencranz*, evidence obtained in an illegal search of one defendant's truck had been introduced at trial against not only the truck owner but also a co-defendant who concededly was not a "person aggrieved" (and therefore not entitled to file a pre-trial motion to suppress) within the meaning of Federal Rule of Criminal Procedure 41(e). The Court held, at 740, that

> "where the wrongful denial of a motion to suppress is prejudicial to both the defendant making the motion and his co-defendants as well, the right to have such evidence excluded from the trial cannot be limited to the defendant who originally made the motion to suppress."

That decision is dispositive here. See also Rosencranz v. United States, 1 Cir., 1966, 356 F.2d 310, 313.

Alternatively, petitioner's case falls within the rule set forth in Judge Aldrich's concurring opinion in *Rosencranz*, 334 F.2d at 741–742. The search here involved was directed not just at Painten but also "against all those, whether their identities were known or not," who might be engaged in the commission of the crime.

> "[T]he real basis of the exclusionary rule is its effect as a police deterrent, and that rule should be fashioned to deter the accomplishment of whatever purpose the police were improperly attempting to further."

I therefore hold that the admission into evidence at petitioner's trial of evidence illegally seized from the co-defendant Painten, with whom he was jointly tried, was a denial of petitioner's constitutional rights.

Having so ruled, I need not consider petitioner's two remaining contentions involving alleged violations of his Sixth Amendment right to counsel.

---

4. For example, there was evidence at the trial that a gun used by Binkiewicz during the the bank robbery was one of those found during the illegal search of the apartment (Transcript, pp. 325 and 655) and that the defendants had proceeded to Painten's apartment on the day of the robbery to count the stolen money. The evidence seized in the search also served to corroborate the testimony of co-defendant Bratkon, who testified on behalf of the Commonwealth as to Binkiewicz's participation in the crime.

5. See Note, 74 Harv.L.Rev. 81, 153 (1960).

6. The Court spoke only of "anyone legitimately on the premises," without indicating whether standing was limited to such persons.

7. In Rosencranz v. United States, 1 Cir., 1964, 334 F.2d 738, 740, n. 3, the court noted that the injury to the co-defendant from nonsuppression obtained even in cases where the seized articles were not returned but were instead forfeited. The real injury lay in their being admitted into evidence at trial.

The petition is granted. The Commonwealth is ordered either to bring petitioner to trial within 60 days from the filing of this opinion or to discharge him from custody.