John LOSINNO, Petitioner,

v.

Robert HENDERSON, Superintendent, Auburn Correctional Facility, Auburn, New York, Respondent.

76 Civ. 3063.

United States District Court, S. D. New York.

Sept. 27, 1976.

Finkelstein, Mauriello, Kaplan & Levine, P. C., Newburgh, N. Y., for petitioner; Howard Karger, Newburgh, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for respondent; Joseph W. Henneberry, Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, now serving an indeterminate sentence not to exceed four years at Auburn Correctional Facility, New York, seeks his release upon a federal writ of habeas corpus. His sentence was imposed pursuant to a judgment of conviction entered in the County Court of Orange, State of New York, upon his plea of guilty to promoting gambling in the first degree. He seeks to void the judgment of conviction on the grounds that it was obtained in violation of his rights under the Fourth and Fourteenth Amendments of the Federal Constitution and under the Omnibus Crime Control and Safe Streets Act of 1968.[1]

The petitioner's plea of guilty was entered after his motion for an order of suppression of evidence obtained under an allegedly invalid eavesdropping warrant was denied. Upon direct appeal from the judgment of conviction,[2] the Appellate Division

---

1. 18 U.S.C. §§ 2510–20.

2. Under New York law, petitioner's plea of guilty did not preclude appellate review of claims relating to improper denial of his suppression motion. N.Y.C.P.L. § 710.70(2) (McKinney's 1971). Thus, the guilty plea did not constitute a waiver of such claims that would preclude federal habeas corpus review. *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975).

held the warrant to be illegal, reversed the judgment of conviction and dismissed the indictment.[3] Upon appeal by the State, the Court of Appeals reversed the dismissal of the indictment and remitted the case to the Appellate Division,[4] which then affirmed the conviction. The claims here presented were also urged upon the state courts, and petitioner has exhausted available state remedies.

The petitioner charges three violations of his constitutional or statutory rights: First, that the eavesdropping warrant through which evidence was obtained against him was issued without probable cause in violation of his rights under the Fourth Amendment; second, that the eavesdropping warrant was void on its face because it authorized the District Attorney of Orange County to designate the person or persons to conduct the eavesdropping surveillance; and third, that the warrant was invalid on its face because it authorized the overhearing and interception of "all conversations" on the target telephone.

▉ As to petitioner's claim of the use of evidence in violation of the Fourth Amendment, the recently decided case of *Stone v. Powell*[5] forecloses federal habeas corpus relief if "an opportunity for full and fair litigation" of such claim was afforded petitioner in the state courts. Upon each appellate review in the state courts, petitioner made the same contention of violation of Fourth Amendment rights that he here advances. Notwithstanding this, he argues that *Stone* is no bar to federal habeas corpus relief because the state appellate courts "remained silent" with respect to his Fourth Amendment claims, and because "there is really no sound way of knowing the basis upon which they rendered their opinions." The appellate records make it clear that the constitutional claim was briefed and presented for review. There is, of course, no requirement that a court write

an opinion touching upon every contention raised by an appellant. That the appellate courts rejected petitioner's constitutional claims without specifically addressing each one does not indicate that he was denied a full and fair opportunity to litigate them or that they were not fully considered. Indeed, when the Appellate Division affirmed the judgment of conviction on remittitur, it stated that it had "considered the points raised by counsel and [found] them without merit." As the Supreme Court recently remarked in Stone:

> "[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States. State courts, like federal courts, have a constitutional obligation to safeguard personal liberties and to uphold federal law."[6]

▉ Losinno's further argument that he was deprived of a full and fair opportunity to litigate the constitutional claims presented here because he was not afforded an evidentiary hearing is without substance. These claims were based only on the warrant and the affidavit upon which it was issued, and consequently no hearing was required.

Petitioner contends that even if his constitutional claim is foreclosed under *Stone v. Powell,* he is nonetheless entitled to federal habeas corpus relief and the vacatur of the judgment of conviction because the State violated the Omnibus Crime Control and Safe Streets Act of 1968—in short, that while his federal constitutional claim fails, the same facts establish a violation of the federal statute which voids the judgment of conviction.

A threshold question that the parties have not addressed is whether this Court has habeas corpus jurisdiction under 28

---

**3.** *People v. Losinno,* 47 A.D.2d 534, 363 N.Y. S.2d 834 (1975).

**4.** *People v. Losinno,* 38 N.Y.2d 316, 379 N.Y. S.2d 777, 342 N.E.2d 556 (1975).

**5.** —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

**6.** —— U.S. —— n. 35, 96 S.Ct. 3051, n. 35; *see United States ex rel. Aloi v. Arnold,* 413 F.Supp. 1384, 1386 (S.D.N.Y.1976).

U.S.C., section 2254, to consider petitioner's federal statutory claim following its rejection by the state courts. The jurisdiction of federal district courts to issue writs of habeas corpus, originally limited to prisoners held in custody by the United States,[7] was extended in 1867 to state prisoners.[8] Under the 1867 Act federal district courts were authorized to give relief in "all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States." Essentially, the Act's purpose was to provide a federal forum for vindication of constitutional guarantees of which a state prisoner had been deprived.[9] The jurisdictional provisions of the 1867 Act have continued virtually unchanged to the present day and are now contained in 28 U.S.C., sections 2241(c)(3) and 2254(a).[10]

 Whether the federal courts have habeas corpus jurisdiction where a state prisoner grounds his claim for release on an alleged violation of the laws of the United States and he does not claim a constitutional violation has rarely arisen under section 2254 petitions for relief.[11] The paucity of decisions on this issue reflects the fact that in most instances the claims under section 2254 charged a defect in the state proceedings that impinged upon a federally protected constitutional right. This probably explains why so many cases categorically

state that "review of state criminal proceedings under [section] 2254 is limited to errors of constitutional magnitude." [12]

Unambiguous as they may be, these statements cannot be taken to preclude consideration of nonconstitutional claims, because they were not made in response to an assertion of nonconstitutional federal rights. Nevertheless, the question of jurisdiction appears to be close, for there are serious objections to allowing habeas corpus proceedings to serve as yet another review by federal district courts of nonconstitutional claims already fully determined by state courts, which, like federal courts, are obligated to enforce the "laws . . . of the United States." [13] However, the recent opinion of the Supreme Court in *Davis v. United States* [14] gives direction on this jurisdictional issue. In *Davis* the Court held that errors of federal law "lacking a constitutional dimension" are cognizable on collateral attack under the "laws of the United States" provision of 28 U.S.C., section 2255, which makes available to federal prisoners a remedy on collateral attack essentially identical to habeas corpus relief. Although *Davis* dealt with section 2255, the Court made it quite clear that its holding applied to section 2254 as well—in fact, the Court held as it did because:

"[T]here can be no doubt that the grounds for relief under § 2255 are equiv-

7. Judiciary Act of 1789 § 14, 1 Stat. 81.

8. Act of Feb. 5, 1867 § 1, 14 Stat. 385.

9. *Fay v. Noia,* 372 U.S. 391, 416, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

10. § 2241 establishes jurisdiction to hear habeas corpus petitions, and § 2254 governs the availability of the remedy. *See Davis v. United States,* 417 U.S. 333, 343–44, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1973).

11. A few very early cases granted relief to state prisoners claiming to be in custody in violation of federal laws conferring on federal courts exclusive jurisdiction to try their crimes, but it is clear that such claims would always involve a denial of due process as well as a violation of a federal statute. *See, e.g., Ex parte Tatum,* 23 F.Cas. 708 (E.D.Va.1877). *See also United States ex rel. Cook v. Parkinson,* 396 F.Supp. 473 (D.S.D.1975) (criminal act performed on alleged Indian territory).

12. *Mapp v. Warden,* 531 F.2d 1167 (2d Cir. 1976); *see, e.g., Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Stewart v. Cox,* 344 F.2d 947 (10th Cir. 1965); *Grundler v. North Carolina,* 283 F.2d 798 (4th Cir. 1960); *Norris v. South Carolina,* 309 F.Supp. 1113 (D.S.C. 1970); *Williams v. Peyton,* 297 F.Supp. 857 (W.D.Va.1969); *United States ex rel. Hill v. Deegan,* 268 F.Supp. 580, 596 n. 20 (S.D.N.Y. 1970).

13. *See Stone v. Powell,* —— U.S. ——, —— n. 35, 96 S.Ct. 3037, 3051, n. 35, 49 L.Ed.2d 1067 (1976).

14. 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

alent to those encompassed by § 2254 . . . under which relief is available on the ground that '[a person] is in custody in violation of the Constitution *or laws or treaties of the United States.*' "[15] (Emphasis in original.)

█ The Court carefully noted, however, that not every violation of federal law is cognizable under section 2255. On the contrary, a claimed error can only be asserted if it is "a fundamental defect which inherently results in a miscarriage of justice" and if it presents "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."[16] The clear implication of *Davis* is that this standard is to be applied to section 2254 petitions as well as to motions under section 2255.[17]

█ We thus turn to consideration of petitioner's alleged federal statutory violations to determine whether they constitute a "fundamental defect" of such "exceptional circumstances" that habeas corpus relief is warranted. First, he argues that the wiretap warrant was invalid on its face under 18 U.S.C., section 2518(4), which requires that "[e]ach order authorizing or approving the interception of any wire . . . communication shall specify . . . (d) the identity of the agency authorized to intercept the communications." The order at issue authorized the District Attorney or Orange County or "any other person or persons designated" by him to conduct the surveillance, and the application for the warrant expressly requested that the order authorize two named New York State police officers and "other members of the New York State Police expressly designated" by the District Attorney to conduct the wiretap. No colorable claim has been made in this proceeding or in the state courts that anyone other than New York state police officers actually executed the warrant. Petitioner rather advances the argument that designation of the District Attorney and his appointees as those authorized to conduct the surveillance is not equivalent to specification of the "agency authorized to intercept communications." This claim rests on a technical application of the statutory language and is plainly not of constitutional magnitude. The alleged error does not constitute a fundamental defect nor does it present exceptional circumstances evidencing a need for the remedy of a writ of habeas corpus. It thus affords no basis for relief under section 2254.

█ Petitioner's second statutory claim is that the wiretapping order was invalid on its face because it violated 18 U.S.C., section 2518(5), which requires that every such order "shall contain a provision that the [surveillance] shall be conducted in such a [way] as to minimize the interception of communications not otherwise subject to interception" under the Act. If substantiated, the error alleged would be sufficient under section 2254 to warrant relief, either because the failure to limit the execution of an order in accordance with the statute is a

---

15. *Id.* at 344, 94 S.Ct. at 2304.

16. *Id.* at 346, 94 S.Ct. at 2305, *quoting Hill v. United States,* 368 U.S. 424, 429, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

17. *See Stone v. Powell,* —— U.S. ——, —— n. 10, 96 S.Ct. 3037, 3043 n. 10 (1976). Because state prisoners are rarely in a position to assert violations of nonconstitutional federal rights, no court appears to have applied *Davis* to a § 2254 petition involving such an assertion. *Davis,* decided in 1974, has since regularly been applied to § 2255 motions, for federal prisoners are frequently able to assert violations of federal law that "lack a constitutional dimension." *E. g., Strauss v. United States,* 516 F.2d 980 (7th Cir. 1975); *Gates v. United States,* 515 F.2d 73 (7th Cir. 1975); *Clicque v. United States,* 514 F.2d 923 (5th Cir. 1975); *United States v. Soto,* 504 F.2d 1339 (3d Cir. 1974). Moreover, the Court of Appeals for the Second Circuit has applied *Davis* to a federal coram nobis petition. *United States v. Travers,* 514 F.2d 1171, 1173 & n. 1 (2d Cir. 1974). The one court that has had an opportunity to apply *Davis* to a § 2254 petition asserting purely nonconstitutional violations of federal law accepted jurisdiction upon finding that such a violation was claimed and did not inquire whether the asserted error was a "fundamental defect" or whether "exceptional circumstances" were presented. *United States ex rel. Esola v. Groomes,* 520 F.2d 830, 834–35 (3d Cir. 1975).

violation of constitutional dimension,[18] or because such an error would constitute a fundamental defect resulting in a miscarriage of justice.[19] Were petitioner's claim proven, the need for the remedy afforded by a writ of habeas corpus would be apparent.

■ Turning to the merits, however, it is apparent that Losinno's minimization claim is without substance. He argues that the requirements of section 2518(5) could not possibly have been met, since the order authorized the District Attorney "to overhear and intercept all conversations" on the target telephone. Although the portion of the order relied upon does contain this language, other provisions of the order make it clear that continued listening was limited to conversations concerning those gambling offenses specifically set forth in the order itself. Moreover, the application for the warrant requested authorization to overhear only those conversations relating to illegal gambling activities. It is reasonably clear from the face of the order that the language attacked by petitioner merely authorizes initial interception and overhearing of all calls, which is obviously necessary in order to determine whether any given call or category of calls is pertinent to the crimes being investigated.[20]

Having found that the order, taken as a whole, did not in fact authorize continued listening to "all conversations," we must further inquire whether the warrant nevertheless limited interceptions so as to comply with section 2518(5). The cases in this circuit involving minimization language in eavesdropping orders were decided under the New York wiretapping law, which, insofar as it is relevant here, virtually tracks the language of the federal statute.[21] There is little doubt that the Court of Appeals would apply these decisions to the federal minimization provision, for the court adopted its view of the state law in the face of conflicting state decisions,[22] and it has on occasion found the two laws to compel the same result.[23] Moreover, one federal court, after an exhaustive review of the Second Circuit opinions, has formally adopted them as setting forth the minimization requirements of the federal law.[24]

Thus, in *United States v. Cirillo*,[25] the Court of Appeals held that the minimization provision of the state statute

"is essentially a summation of 'the more specific requirements of [C.P.L.] 700.-

**18.** *See Krilich v. United States,* 502 F.2d 680 (7th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1429, 43 L.Ed.2d 673 (1975).

**19.** *See United States v. Consiglio,* 391 F.Supp. 564, 570 (D.Conn.1975). *See also United States v. Giordano,* 416 U.S. 505, 515, 527–29, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); *Gelbard v. United States,* 408 U.S. 41, 46–52, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). Much of the Supreme Court's reasoning in *Stone v. Powell,* ____ U.S. ____, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), might be taken to imply that wrongful admission of illegally obtained evidence could never constitute a fundamental defect for purposes of habeas corpus jurisdiction. In *Stone,* however, the Court addressed itself only to violations of the judicially-created exclusionary rule, adopted to encourage compliance with the dictates of the Fourth Amendment. The instant petition is grounded on alleged violations of the exclusionary rule adopted by Congress to effectuate its purposes in passing the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C. § 2515. In light of specific congressional findings with respect to the efficacy and purpose of this exclusionary rule, which of course exists independently of the rule adopted by the judiciary, *Stone* cannot be read to preclude the petitioner's application. *See* S.Rep.No.1097, 90th Cong., 2d Sess. (1968), U.S.Code Cong. & Admin.News 1968, p. 2112.

**20.** *United States v. Scott,* 170 U.S.App.D.C. 158, 516 F.2d 751, 754–55 (1975); *United States v. Quintana,* 508 F.2d 867, 874 (7th Cir. 1975).

**21.** *See* N.Y.C.P.L. § 700.30(7) (McKinney's 1971).

**22.** *See United States v. Manfredi,* 488 F.2d 588, 598 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974).

**23.** *E. g., United States v. Rizzo,* 491 F.2d 215 (2d Cir.), *cert. denied,* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974).

**24.** *United States v. Baynes,* 400 F.Supp. 285 (E.D.Pa.1975).

**25.** 499 F.2d 872 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974).

30(1)–(6) [corresponding to 18 U.S.C. § 2518(4)], all of which lead to "minimization," ' . . . [W]hen the orders and supporting affidavits are construed in 'a commonsense and realistic fashion,' . . mere omission of the 'talismanic minimization language' from a wiretap order otherwise in compliance with the statute would not render the warrant invalid . . . at least where the supporting affidavits evidenced an actual knowledge of the minimization requirements and an agreement to abide by [them].[26]

The order being attacked here easily passes muster under the standards enunciated in *Cirillo*. Unlike the order in that case, this order authorized the District Attorney "to obtain by wiretapping conversations and discussions pertinent to the said [gambling] crimes." In addition, the order *complied in all respects with section 2518(4),* which contains the specific minimization requirements of the federal law. As noted, the order and the affidavits upon which it was issued clearly show that the officials seeking to tap Losinno's telephone both knew of and intended to abide by the minimization requirements. Indeed, petitioner has never claimed that the surveillance was not conducted so as to minimize the overhearing of conversations not related to illegal gambling activities. In sum, the wiretap order was in substantial compliance with section 2518(5), and evidence garnered pursuant to it was properly admitted against Losinno during his trial.

The petition for a writ of habeas corpus is accordingly denied.

---

**26.** *Id.* at 879, *quoting United States v. Manfredi,* 488 F.2d 588 (2d Cir. 1973), *cert.* *denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974) (citations omitted).