Anthony L. WILLIAMS, 138–796

v.

STATE OF MARYLAND.

Civ. No. B–77–1757.

United States District Court,
D. Maryland.

Feb. 9, 1978.

---

Anthony L. Williams, pro se.

Francis B. Burch, Atty. Gen., John P. Stafford, Jr., Asst. Atty. Gen., Baltimore, Md., for respondent.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

In this petition for a writ of habeas corpus, petitioner seeks release from confinement because of an alleged denial of his right to a speedy trial by the State of Maryland. Petitioner's claim is based chiefly on an asserted violation of the Interstate Agreement on Detainers (IAD), to which the State has been a party at all times relevant. *See Annotated Code of Maryland,* art. 27, §§ 616A–616R (1976). Additionally, under a liberal construction of the petition, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), petitioner may be asserting a denial of his Sixth Amendment right to a speedy trial.

The facts are not in dispute.[1] After being arrested in Maryland on January 15, 1972, petitioner began serving a sentence in a New Jersey correctional institution. On February 4, he was informed by officials of the New Jersey institution that Maryland authorities had lodged a detainer against him. Petitioner states that between March 14 and June 14 he addressed several letters to the District Court for the Third District of Maryland and to the Public Defender for Queen Anne's County requesting prompt disposition of the charges pending against him. His requests were forwarded by telephone to an assistant state's attorney for Queen Anne's County. Petitioner was indicted on October 2, 1972. On October 4 petitioner, having signed a formal rendition agreement, was released to the custody of Maryland authorities. At trial on October 6, petitioner, represented by counsel, entered a plea of guilty which was accepted by the court. Petitioner did not appeal his conviction but filed a petition for relief under the Maryland Post Conviction Procedure Act, asserting, *inter alia,* the claims raised in the instant petition. After a hearing before the state court, relief was denied. Application for leave to appeal was dismissed by the Court of Special Appeals.

### The Constitutional Claim

Although the main thrust of the petition is an asserted violation of the IAD, petitioner makes an incidental reference to his Sixth Amendment right to a speedy trial. The court will assume that petitioner intended to assert a deprivation of this right. It is evident, however, that petitioner's constitutional right to a speedy trial was not denied.

▪ Under the familiar balancing analysis of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the court must consider the length of the delay, the reason for the delay, petitioner's assertion of his right, and prejudice suffered by the petitioner. Petitioner asserts that he was arrested on January 15, 1972 and tried on October 6, 1972. Even assuming this delay of less than nine months is sufficient to trigger the *Barker* analysis, *see* 407 U.S. at 530–31, 92 S.Ct. 2182, it is apparent that petitioner was not denied his right to a speedy trial.

There is no suggestion that the delay was caused by deliberate inaction on the part of the state. The state was negligent at most in proceeding, and at least part of the delay may be attributed to petitioner's failure to request trial properly under the IAD.[2] Petitioner did, however, make demands for trial, if not through proper channels.

▪ It is well settled that the burden of establishing prejudice rests upon the petitioner. *Ricon v. Garrison,* 517 F.2d 628, 634 (4th Cir.), *cert. denied,* 423 U.S. 895, 96 S.Ct. 195, 46 L.Ed.2d 127 (1975). However, the petitioner has failed to allege any way in which he or his defense was prejudiced by the pretrial delay. Weighing the four factors to be considered under *Barker,* the court finds no violation of petitioner's constitutional right to a speedy trial.

Therefore, there is no need for the court to consider whether the longstanding rule that a valid guilty plea[3] waives a defendant's constitutional right to a speedy trial— *see, e. g., Speed v. United States,* 518 F.2d 75, 77 (8th Cir.), *cert. denied,* 423 U.S. 988, 96 S.Ct. 398, 46 L.Ed.2d 306 (1975); *United States v. Saldana,* 505 F.2d 628, 629 (5th Cir. 1974)—has been altered by the Supreme Court decisions in *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam).[4] The court notes, however,

---

1. Consequently, no hearing is necessary. 28 U.S.C. § 2254(d); *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

2. *See* discussion of petitioner's IAD claim *infra.*

3. Petitioner makes no allegation that his plea was not made intelligently and voluntarily.

See *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

4. The effect of a guilty plea on subsequent collateral attacks upon a conviction is discussed more fully *infra.*

that the Ninth Circuit has affirmed the rule that a valid guilty plea bars collateral attack based on an asserted denial of the right to a speedy trial. *United States v. O'Donnell,* 539 F.2d 1233, 1236–37 (9th Cir.), cert. denied, 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328 (1976).

### The IAD Claim

Article III of the Interstate Agreement on Detainers, *Annotated Code of Maryland,* art. 27, § 616D, requires that a prisoner against whom a detainer is lodged be brought to trial within 180 days after he has requested disposition of the charges pending against him:

(a) *Notice of imprisonment and request for disposition; time of trial; continuance; certificate of official having custody.*—Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of

parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(b) *To whom notice and request sent.*—The written notice and request for final disposition referred to in subsection (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

The State of Maryland has supplemented the IAD by specifying that notice should not be deemed to have been delivered until it has been actually received. *Annotated Code of Maryland,* art. 27, § 616Q.

■■ An initial question is whether the court has jurisdiction to consider a petition for a writ of habeas corpus which asserts a violation of the IAD.[5] A federal court may entertain a prisoner's application for habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The instant petition asserts a violation of what on its face would appear to be a state statute.

[6] The IAD, however, is an interstate compact which, under the Constitution, requires the approval of Congress. U.S. Const. art. 1, § 10, cl. 3. Congress has given advance approval to interstate agreements designed to foster law enforcement, 4 U.S.C. § 112(a) (Cum.Supp.1976), and Congress intended that this approval extend to the IAD, *see* S.Rep.No. 91–1356, 91st Cong., 2d Sess., [1970] U.S.Code Cong. & Admin. News pp. 4864, 4866. As a consequence, it has been concluded that the IAD creates federal rights which may be raised in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. *Beebe v. Vaughn,* 430 F.Supp. 1220, 1222–23 (D.Del.1977); *Stroble v. Egeler,* 408 F.Supp. 630, 633–34 (E.D.

---

**5.** The issue was not raised by the respondent. A federal court, however, is always required to examine its jurisdiction. *Mansfield, C. & L. Ry.*

*v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884).

Mich.1976), *remanded with instructions*, 547 F.2d 339 (6th Cir. 1977); *United States ex rel. Esola v. Groomes,* 520 F.2d 830, 840–42 (3d Cir. 1975) (Garth, J., concurring).[6] *Cf. League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 507 F.2d 517 (9th Cir. 1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975) (interstate regional development compact, consented to by Congress, held to create federal rights which confer federal jurisdiction under 28 U.S.C. § 1331(a)). Having considered these authorities, the court finds jurisdiction to consider the merits of the petition.

From the pleadings filed, it appears that a letter sent by petitioner requesting trial on the Maryland charges was received by the state District Court approximately March 15, 1972. It further appears that on April 6 the District Court telephoned an assistant state's attorney and relayed to him petitioner's request. If such informal notice satisfies the requirements of the IAD, more than 180 days elapsed from the time notice of petitioner's request for trial was received until his trial on October 6, 1972.

██ The state court, in denying petitioner's application for post-conviction relief, found no violation of the IAD because of petitioner's failure to comply with the formal notice requirements of the Act, *Annotated Code of Maryland,* art. 27, § 616D. This court agrees that petitioner did not properly invoke the provisions of the IAD. Although strict compliance with each particular of the notice requirement may not be mandatory, *see, e. g., State v. Barnes,* 273 Md. 195, 328 A.2d 737 (1974), more is required than merely addressing a request to one of the persons required by statute to be notified. Petitioner failed to have mailed the certificate required by § 616D(a), and he personally contacted only the court, not the state's attorney's office. The notice provision of the IAD was obvi-

ously enacted to ensure adequate notification to the state, and its particulars may not be ignored totally. Moreover, the IAD statutory requirements impose time constraints which in many, if not most, cases are more restrictive than those required by the Constitution. A prisoner seeking to benefit from the statutory provisions must first meet the burden of compliance with the Act. Petitioner, having failed to satisfy the notice prerequisites of the Act despite advice that he must do so, may not now complain that he was denied its benefits. *See Beebe v. Vaughn,* 430 F.Supp. 1220, 1223–24 (D.Del.1977); *Isaacs v. State,* 31 Md.App. 604, 358 A.2d 273, 276–79 (1976).

██ Furthermore, it has been held that section 2254 affords a basis for relief from violation of a federal statute only when the asserted error is "a fundamental defect which inherently results in a miscarriage of justice." *Losinno v. Henderson,* 420 F.Supp. 380, 382–84 (S.D.N.Y.1976) (citing *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)). The court finds it clear that any possible violation of the IAD present in the instant case was not a fundamental defect. No miscarriage of justice can be said to have resulted from bringing petitioner to trial only slightly in excess of 180 days later than his request for trial.

██ Finally, even assuming a violation of the IAD and a fundamental defect, the court concludes that petitioner is precluded by his plea of guilty from asserting a violation of the IAD. The basic statement of the effect of a guilty plea was made by the Supreme Court in *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973):

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open

---

6. *Esola* concerned the transfer of a federal prisoner to New Jersey for trial. The majority found federal jurisdiction to exist based on the fact that the United States is a party to the IAD under Act of December 9, 1970, Pub.L.No.91–538, 84 Stat. 1397 (codified at 18 U.S.C.A. App.

p. 230 (Supp.1977)). Consequently, the court found it unnecessary to decide whether federal jurisdiction would exist over a claim presented by a prisoner transferred from one state to another. *See* 520 F.2d at 834–36.

court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)].

*Tollett,* however, has been clarified by later decisions. In *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court held that a guilty plea did not bar a prisoner's complaint that his conviction violated due process. After having been convicted of a misdemeanor and filing an ·appeal, Perry was indicted on a felony charge based on the same conduct for which he had been convicted of the misdemeanor. The Court distinguished *Tollett* and prior cases [7] on the ground that none of the claims raised in those cases "went to the very power of the State to bring the defendant into court to answer the charge brought against him. . . . [T]he right that [Perry] asserts and that we today accept is the right not to be haled into court at all. . . ." 417 U.S. at 30, 94 S.Ct. at 2103.

The Supreme Court further explained the meaning of the *Tollett* rule in *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam). The Court, relying on *Blackledge v. Perry, supra,* reversed a decision by the New York Court of Appeals which held that entry of a plea of guilty barred a prisoner's contention that his conviction violated the double jeopardy clause. The Court explained *Tollett* in a footnote:

> Neither *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), nor our earlier cases on which it relied, *e. g., Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and

*McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), stand for the proposition that counseled guilty pleas inevitably "waive" all antecedent constitutional violations. If they did so hold, the New York Court of Appeals might be correct. However, in *Tollett* we emphasized that waiver was not the basic ingredient of this line of cases, 411 U.S., at 266, 93 S.Ct. 1602. The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established. Here, however, the claim is that the State may not convict petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar the claim. 423 U.S. at 62–63 n. 2, 96 S.Ct. at 242.

Since *Blackledge* and *Menna,* courts have recognized certain other limited exceptions to the general principle that a valid guilty plea bars collateral attack. The Fourth Circuit has held that a guilty plea does not preclude a subsequent challenge to a conviction where, due to a previously unrecognized constitutional right, the defendant had an absolute constitutional defense to the charge. *United States v. Bluso,* 519 F.2d 473 (4th Cir. 1975) (conviction barred by the self-incrimination rule of *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968)); *accord, United States v. Sams,* 521 F.2d 421, 424–28 (3d Cir. 1975). It has also been held that a guilty plea does not bar a collateral attack challenging the constitutionality of the statute under which the

---

**7.** *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d

763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

1222

conviction was obtained. *Journigan v. Duffy*, 552 F.2d 283, 287–89 (9th Cir. 1977).

Clearly, an asserted denial of the statutory right to a speedy trial created by the IAD is far different from the denials of constitutional rights alleged in these cases. Petitioner's guilty plea established his factual guilt of a crime for which punishment may be constitutionally imposed. Denial of the statutory right to a speedy trial is far different from such fundamental defects as being placed in double jeopardy or being convicted of violating an unconstitutional statute. A mere lapse in time between the institution of criminal proceedings and trial, certainly so long as it is not of constitutional magnitude, does not implicate fundamental rights of a criminal defendant. Even assuming a violation of the IAD, petitioner's guilty plea bars this attack upon what was at most a procedural defect in bringing him to trial.

Accordingly, it is this 9th day of February, 1978, by the United States District Court for the District of Maryland, ORDERED that the instant petition for a writ of habeas corpus be, and the same hereby is, DENIED.